IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

JERRY COURTNEY                                                                          PLAINTIFF

v.                                        No. 5:14–CV–365-KGB–BD

CAROLYN W. COLVIN, Acting Commissioner,
Social Security Administration                                                          DEFENDANT

## Recommended Disposition

### Instructions

The following recommended disposition was prepared for U.S. District Judge Kristine G. Baker. A party to this dispute may file written objections to this recommendation. An objection must be specific and state the factual and/or legal basis for the objection. An objection to a factual finding must identify the finding and the evidence supporting the objection. Objections must be filed with the clerk of the court no later than 14 days from the date of this recommendation.[1] The objecting party must serve the opposing party with a copy of an objection. Failing to object within 14 days waives the right to appeal questions of fact.[2] If no objections are filed, Judge Baker may adopt the recommended disposition without independently reviewing all of the record evidence.

---

[1] 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

[2] *Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994) (failure to file objections waives right to de novo review and to appeal magistrate judge's findings of fact).

**Reasoning for Recommended Disposition**

Jerry Y. Courtney seeks judicial review of the denial of his second application for social security disability benefits.[3] Between applications, Mr. Courtney worked on a production line for Tyson Poultry.[4] He claims he has been disabled since he lost his job on April 1, 2011.[5] He bases disability on Bell's palsy, high blood pressure, back problems, vision problems, and headaches.[6]

**The Commissioner's decision**. After considering the application, the Commissioner's ALJ identified the following conditions as severe impairments:

> (1) hypertension, amendable to medical control with treatment compliance;
>
> (2) history of Bell's palsy on the right with mild left hemi-facial spasm with tearing and irritation of the right eye;
>
> (3) sleep apnea, amendable to medical control with treatment compliance;
>
> (4) mild degenerative changes in the lumbar spine without canal spinal stenosis or nerve cord/root abnormality;

---

[3]SSA record at p. 176 (applying on Apr. 14, 2011, alleging disability beginning Apr. 1, 2011). In his first application, Mr. Courtney alleged he became disabled on December 31, 2008; that application was denied on March 30, 2009. *Id*. at pp. 180 & 631.

[4]*Id*. at p. 199.

[5]*Id*. at p. 198 (reporting that he was terminated on April 1, 2011).

[6]*Id*.

>(5) tension headaches;
>
>(6) alcohol dependence with depression/adjustment disorder with mixed emotions (substance induced mood disorder);
>
>(7) intermittent explosive disorder; and
>
>(8) personality disorder.[7]

The ALJ determined that Mr. Courtney could perform unskilled work with the following limitations: (1) incidental interpersonal contact; (2) tasks learned and performed by rote with few variables; (3) little individual judgment required; and (4) simple, direct, concrete supervision.[8] Because a vocational expert testified that Mr. Courtney's former work meets these limitations,[9] the ALJ determined Mr. Courtney could do his past work and denied the application.[10]

After the Commissioner's Appeals Council denied a request for review,[11] the decision became a final decision for judicial review.[12] Mr. Courtney filed this case to

---

[7]*Id*. at p. 18.

[8]*Id*. at p. 20.

[9]*Id*. at pp. 92-93.

[10]*Id*. at p. 35.

[11]*Id*. at p. 1.

[12]*See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) ("[T]he Social Security Act precludes general federal subject matter jurisdiction until administrative remedies have been exhausted").

challenge the decision.[13] In reviewing the decision, the court must determine whether substantial evidence supports the decision and whether the ALJ made a legal error.[14] This recommendation explains why substantial evidence supports the decision and why the ALJ made no legal error.

**Mr. Courtney's allegations**. Mr. Courtney generally challenges the ALJ's decision, but focuses on the identification of severe impairments and the consideration of medical opinion evidence. He argues that the medical evidence supports more limitation than the ALJ found. For these reasons, he says, substantial evidence does not support the decision.[15]

**Applicable legal principles**. For substantial evidence to support the decision, a reasonable mind must accept the evidence as adequate to show that Mr. Courtney could do his past work.[16] A claimant who can do his past work is not disabled under social

---

[13] Docket entry # 1.

[14] *See* 42 U.S.C. § 405(g) (district court must determine whether Commissioner's findings are supported by substantial evidence and whether the Commissioner complied with applicable regulations); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision to deny an applicant disability benefits if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled.").

[15] Docket entry # 12.

[16] *Britton v. Sullivan*, 908 F.2d 328, 330 (8th Cir. 1990) ("Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'").

security law.[17] The claimant bears the burden of proving he can no longer do his past work.[18] Mr. Courtney did not meet this burden for the following reasons:

>   1. **Mr. Courtney undermined his credibility**. Allegations play an important role in determining whether a claimant is disabled. An ALJ must evaluate the claimant's credibility before determining his ability to work.[19] Mr. Courtney says he became disabled the day he was terminated, but he was terminated for reasons unrelated to his reasons for disability.[20] Claiming to be disabled on the day he was terminated is inconsistent with why he lost his job.
>
>   After losing his job, Mr. Courtney sought employment, unemployment benefits, and social security disability benefits.[21] Seeking employment and seeking unemployment benefits are inconsistent with being disabled, because both efforts require the ability to work.[22] The ALJ properly relied

---

[17]20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4) ("If you can still do your past relevant work, we will find that you are not disabled.").

[18]*Baumgarten v. Chater*, 75 F.3d 366, 368 (8th Cir. 1996); *Locher v. Sullivan*, 968 F.2d 725, 727 (8th Cir. 1992).

[19]*Ellis v. Barnhart*, 392 F.3d 988, 995-96 (8th Cir. 2005).

[20]SSA record at pp. 66, 198, 305 & 602 (terminated for having alcohol on premises).

[21]*Id*. at pp. 227, 508, 533, 549, 593-94, 596 & 852. Mr. Courtney also pursued rehire — another inconsistency — but the unfavorable decision does not mention that effort. *Id*. at pp. 596 & 599.

[22]ARK. CODE ANN. § 11-10-507(3) (setting eligibility conditions for unemployment benefits and including that the worker "is unemployed, is physically and mentally able to perform suitable work, and is available for such work"); *Jernigan v. Sullivan*, 948 F.2d 1070, 1074 (8th Cir. 1991) ("A claimant may admit an ability to work by applying for unemployment compensation benefits because such an applicant must hold himself out as available, willing and able to work.").

on the inconsistencies to discount Mr. Courtney's credibility.[23] The inconsistencies suggest other motivation for seeking disability benefits.

2. **Treatment records show no disabling physical symptoms**. A claimant's allegations are not enough to prove he is disabled; the claimant must prove disability with medical evidence.[24] The medical evidence shows Mr. Courtney's physical impairments existed before he lost his job — he worked with the symptoms underlying his claim. After he lost his job, he sought more frequent medical treatment, but treatment records show no disabling symptoms.

A possible hairline fracture of the right kneecap may have interfered with walking and standing for a short period of time,[25] but diagnostic imaging

---

[23]*Partee v. Astrue*, 638 F.3d 860, 865 (8th Cir. 2011) ("The ALJ may discredit a claimant based on inconsistencies in the evidence."); *Dunahoo v. Apfel*, 241 F.3d 1033, 1038 (8th Cir. 2001) ("The ALJ may discount complaints of pain if they are inconsistent with the evidence as a whole.").

[24]42 U.S.C. § 423 (d)(5)(A) ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability…; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment…which could reasonably be expected to produce the pain or other symptoms alleged and which…would lead to a conclusion that the individual is under a disability"); 20 C.F.R. §§ 404.1508 & 416.908 ("A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms."); 20 C.F.R. §§ 404.1529 & 416.929 ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled.").

[25]SSA record at pp. 462-63 (diagnostic imaging of right knee showing "suggestion of possible hairline fracture," tissue swelling, and Baker's cyst).

shows nothing interfering with functioning for 12 continuous months.[26] Diagnostic imaging of the lumbar spine shows mild degenerative changes,[27] but the descriptor "mild" suggests no disabling symptoms.

Mr. Courtney complained about disabling headaches, but a neurologist told him that his headaches would not improve so long as he took daily narcotic pain medicine and recommended narcotic detox.[28] Mr. Courtney insisted narcotic pain medication — and alcohol — helped his headaches.[29] Continuing to use narcotics and alcohol indicate the headaches were not disabling.

Bell's palsy first surfaced during childhood and resurfaced during employment with Tyson.[30] The condition resolved, but left some mild facial spasm, eye irritation and tearing.[31] An ophthalmologist prescribed

---

[26] *See* 42 U.S.C. § 1382c(a)(3)(A) (specifying duration requirement for disability benefits); 20 C.F.R. § 404.1505(a) ("The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.").

[27] SSA record at p. 461 (diagnostic imaging of lumbar spine showing annular tear, mild diffuse disk bulge, mild bilateral neural foraminal narrowing at L5/S1; mild diffuse disk bulge and mild bilateral neural foraminal narrowing at L4/5; no significant spinal stenosis; no cord or nerve root signal abnormality).

[28] *Id.* at p. 298 ("minimize use of Hydrocodone and narcotics") & p. 300 ("I am not expecting his [headaches[ to improve as long as he is on daily hydrocodone.").

[29] *Id.* at pp. 310 & 602.

[30] *Id.* at p. 296 ("He had first episode of Right facial palsy in childhood and the second episode in Jan09.").

[31] *Id.* at pp. 310-11 (right facial nerve palsy but with fairly good strength in muscle that controls use of mouth and lips; incomplete blink; left mild hemi-facial spasm) & p. 816 (right facial nerve palsy, can close eyelids but has incomplete blink; mild stable left hemi-facial spasm).

treatment for the latter symptoms. Mr. Courtney's blood pressure fluctuated, but improved with treatment and compliance.

The ALJ properly concluded that Mr. Courtney's physical impairments were amenable to control with treatment. He complains about that aspect of the decision, but medical recommendations show his conditions could be controlled with treatment.[32] "An impairment which can be controlled by treatment or medication is not considered disabling."[33]

3. **Treatment records show non-compliance**. A claimant who does not comply with prescribed treatment without good reason is barred from receiving disability benefits.[34] Doctors documented non-compliance many times.[35] Medical providers emphasized the need for medication compliance, proper sleep hygiene, and abstinence from alcohol to manage hypertension, but with little effect until non-compliance affected the kidneys.[36] The ALJ properly relied on non-compliance.

---

[32]*Id*. at p. 517 (improved blood pressure since increasing Apresoline), p. 668 ("Since [blood pressure] better controlled will continue the plan with tapering clonidine.") & p. 778 (sleep apnea responded well to continuous positive airway pressure, but he has not yet used to it).

[33]*Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002).

[34]*Tome v. Schweiker*, 724 F.2d 711, 713-14 (8th Cir. 1984). *See* 20 C.F.R. §§ 404.1530 & 416.930.

[35]*See, e.g.*, SSA record at p. 363 (missed appointment with neurology), p. 536 (taking more pain medication than prescribed), p. 588 (twice missed sleep study), p. 684 (warned about risk of stroke due to elevated blood pressure, but he refused admission), p. 709 (narcotic pain medication suspended due to positive drug screen), p. 741 (non-compliance with low sodium diet and continuous positive airway pressure makes it hard to control blood pressure) & p. 831 (not compliant with continuous positive airway pressure).

[36]*Id*. at pp. 81-82 (explaining that he got scared because he did not want to go dialysis), pp. 844 & 846 (hospital admission for uncontrolled blood pressure and chronic kidney disease) & p. 678 ("says is taking his [blood pressure] medications properly").

4.  **Alcohol contributed to mental symptoms**.  Prior to losing his job, Mr. Courtney saw a mental health specialist for depression.  The specialist diagnosed depression and alcohol abuse.[37]  The latter diagnosis is important because a claimant is not eligible for disability benefits if alcohol abuse is a contributing factor to disability.[38]

The mental specialist prescribed psychotropic medications, cognitive behavioral therapy, and abstaining from alcohol.[39]  Mr. Courtney stopped taking prescribed medication, did not attend cognitive behavioral therapy, and continued to drink alcohol.  After losing his job, he drank more.[40]  He asked for a new mental health provider and reported that he no longer used alcohol, but treatment records show that was not true.

The new mental health provider, a psychiatrist, made recommendations similar to the original mental health specialist's, but Mr. Courtney did not follow the recommendations.

The psychiatrist identified several psycho-social stressors impairing Mr. Courtney's functioning: job loss, lack of income, financial uncertainty,

---

[37]*Id*. at p. 363.

[38]42 U.S.C. § 423(d)(2)(C) ("An individual shall not be considered to be disabled … if alcoholism … would … be a contributing factor material to the Commissioner's determination that the individual is disabled."); *Rehder v. Apfel*  205 F.3d 1056, 1060 (8th Cir. 2000) ("If the claimant's remaining limitations would not be disabling, the claimant's alcoholism … is a contributing factor material to a determination of disability and benefits will be denied.").

[39]SSA record at p. 587 (refuses to take responsibility for past behaviors, denies problems with alcohol, non-compliant with medication).

[40]*Id*. at p. 602 (drinking every day since being fired).

legal issues, relationship issues, and chronic pain.[41]  These stressors suggest other motivation for seeking disability benefits.

During the hearing, the psychiatrist indicated that Mr. Courtney could perform simple routine tasks with incidental interpersonal contact if he stopped drinking.  That is the type of work the ALJ required.

5. **The ALJ made no step two error**.  At step two of the disability-determination process, the ALJ determines whether the claimant has a severe impairment.[42]  Mr. Courtney says the identified impairments are inconsistent with medical diagnoses, but even if this is true, a diagnosis does not establish a severe impairment.  To be severe, an impairment must significantly limit the claimant's physical or mental ability to do basic work activities.[43]  A diagnosis does not make that showing.

Moreover, the purpose of step two is to weed out claimants whose abilities to work are not significantly limited.[44]  If the claimant shows he has a severe impairment, the process proceeds to the next step.  If the claimant meets his step-two burden, there can be no reversible error where the record shows the ALJ considered all of the medical evidence and all of the claimant's impairments.  The record in this case shows the

---

[41]*Id*. at p. 514 (fighting with wife), p. 533 (hasn't been able to find work), p. 549 (on parole with little hope of finding work), p. 596 (charged with assaulting police detective and driving recklessly), p. 599 (twice convicted for selling drugs), p. 594 (denied social security disability and unemployment benefits), p. 732 (charged with assaulting wife) &. 736 (wife left him).

[42]20 C.F.R.  §§ 404.1520(a)(4)(ii) & 416.920(a)(4)(ii).

[43]*See* 20 C.F.R.  §§ 404.1520(c) & 416.920(c) (explaining that claimant is not disabled unless he has "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities").

[44]*Bowen v. Yuckert*, 482 U.S. 137, 156-57 (1987) (O'Connor, J., concurring) (explaining that the Social Security Act authorizes the Commissioner to weed out applications by claimants who cannot possibly meet the statutory definition of disability at step two of the disability-determination process).

ALJ considered all of the medical evidence and all of Mr. Courtney's impairments.

6. **The ALJ properly resolved conflicts in medical evidence**. When medical evidence conflicts, the ALJ must resolve the conflict before determining the claimant's ability to work.[45] In this case, medical opinion evidence conflicts. The ALJ resolved the conflict by giving the psychiatrist's testimony[46] and agency medical consultant's opinion[47] greater evidentiary weight than the examining psychologist's report[48] and the primary care physician (PCP) written statement.[49] The ALJ provided good reasons for resolving the conflict in that manner.[50] Treatment notes

---

[45]*Dipple v. Astrue*, 601 F.3d 833, 836 (8th Cir. 2010) ("It was the ALJ's task to resolve the differences between these consultative evaluations in the light of the objective evidence."); *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001) ("It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. … The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.").

[46]SSA record at pp. 48-62.

[47]*Id*. at pp. 385-401 & 632.

[48]*Id*. at pp. 377-79.

[49]*Id*. at p. 635.

[50]*Id*. at p. 33-34 (psychiatrist's testimony supported by other substantial evidence; examining psychologist unaware of numerous inconsistencies; PCP set out subjective complaints without addressing history of substantial noncompliance and failed to respond to subpoena).

do not support the PCP written statement.[51] The examining psychologist was unaware of the numerous inconsistencies reflected in the record.[52]

7. **Vocational evidence supports the decision**. The medical evidence shows no impairment interfering with physical functioning, but it indicates circumstances and psycho-social stressors that would impair mental functioning. The ALJ's limitations address the concrete consequences of that impairment.[53] The ALJ asked a vocational expert whether a hypothetical person with the same impairment could do any of Mr. Courtney's past work. The vocational expert identified two past jobs: the poultry production line work and construction worker II.[54]

8. **The increase in veterans benefits does not change the result**. Mr. Courtney says the ALJ did not consider his increase in veterans disability benefits, but even though he did not mention the increase in the decision, the ALJ admitted the award letter during the hearing.[55] The increase was based on chronic headaches. In any event, the award letter stated that "there is a likelihood of improvement."[56]

No harm flowed from the omission. The ALJ considered the medical evidence underlying the increase. The evidence shows that a neurologist prescribed treatment to improve headaches, but Mr. Courtney did not

---

[51]*Compare id*. at p. 635 (PCP letter reporting regular daytime sleepiness despite continuous positive airway pressure) *with id*. at p. 741 (contemporaneous treatment note stating that Mr. Courtney is not compliant with continuous positive airway pressure).

[52]*Compare id*. at p. 377 (reporting that Bell's Palsy has come and gone in the past) *with id*. at 296 (reporting first episode during childhood and second episode in January 2009 when he worked for Tyson).

[53]*Lacroix v. Barnhart*, 465 F.3d 881, 889-90 (8th Cir. 2006) (hypothetical question should capture the concrete consequences of claimant's impairments).

[54]SSA record at pp. 92-93.

[55]*Id*. at p. 44.

[56]*Id*. at p. 862.

comply. The VA rules resolve doubts about disability in favor of the veteran,[57] but an ALJ must evaluate the claimant's credibility and rely on competent medical evidence.[58] The ALJ evaluated credibility using the required two-step process and the required factors,[59] and properly determined Mr. Courtney over-stated his limitation.

## Conclusion and Recommendation

Substantial evidence supports the ALJ's decision. The ALJ made no legal error. For these reasons, the undersigned magistrate judge recommends DENYING Mr. Courtney's request for relief (docket entry # 2) and AFFIRMING the Commissioner's decision.

Dated this 25th day of August, 2015.

_____
UNITED STATES MAGISTRATE JUDGE

---

[57]38 C.F.R. §§ 3.102, 4.2, 4.3.

[58]*Ellis v. Barnhart*, 392 F.3d 988, 995-96 (8th Cir. 2005); *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996); *Nelson v. Sullivan*, 966 F.2d 363, 366 (8th Cir. 1992).

[59]SSR 96-7p, *Pol'y Interpretation Ruling Titles II & XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*.